IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SANJUAN CORTEZ TAYLOR, | ) | |
|    Petitioner, | ) | |
| | ) | CIVIL ACTION NO. 14-00471-WS |
| v. | ) | |
| | ) | CRIMINAL ACTION NO. 13-00243-WS-N |
| UNITED STATES OF AMERICA, | ) | |
|    Respondent. | ) | |

## REPORT AND RECOMMENDATIONS

Sanjuan Cortez Taylor, a prisoner currently in custody of the Alabama Department of Corrections and proceeding *pro se*, has filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. 29[1]), challenging the judgment entered against him in the above-styled criminal action.[2]    Under S.D. Ala. GenLR 72(b), this matter has been referred to the undersigned Magistrate Judge, who is authorized under S.D. Ala. GenLR 72(a)(2)(R) to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of Taylor's § 2255 motion, in accordance with 28 U.S.C. § 636(b)(1)(B)-(C), Rule 8(b) of the Rules Governing § 2255 Proceedings for the United States District Courts, and S.D. Ala. GenLR 72(a)(2)(R).

---

[1] All "Doc." citations herein refer to the docket of the above-styled criminal action.

[2] A little over a week after Taylor's initial § 2255 motion (Doc. 29) was docketed, the Court received a second § 2255 motion from him (Doc. 31).  While there are some formatting differences, the second § 2255 motion is substantively identical to the first and is even dated the same ("10-1-14").  Thus, it is **RECOMMENDED** that Taylor's duplicate § 2255 motion (Doc. 31) be found **MOOT**.

Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** that Taylor's § 2255 motion (Doc. 29) be **DENIED** without an evidentiary hearing and that Taylor be denied a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal.

## I.     Background

Assistant Federal Defender Christopher Knight was appointed as counsel for Taylor in this criminal action, representing him from arraignment through sentencing.  On April 10, 2014, Taylor, pursuant to a written plea agreement (Doc. 18), pled guilty to Count 2 of the Indictment (Doc. 1), charging an offense of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (*See* Docs. 19, 27).

In accordance with Federal Rule of Criminal Procedure 32, the Probation Office prepared a draft Presentence Investigation Report (PSI) (Doc. 20).  In paragraphs 6 and 7, located within the section detailing "Offense Conduct," the PSI set forth facts indicating that Taylor was involved in two robberies occurring in June 2013.  (*See* Doc. 20 at 3 − 4).  During the first, occurring June 23, Taylor purportedly robbed two victims at a residence while pointing a "chrome handgun" at them.  Taylor fired a shot from the firearm as he forced his way inside.  A struggle for the gun ensued between Taylor and one of the victims, during which Taylor grabbed a knife and cut the victim.  During the second robbery, occurring June 26, Taylor and an unidentified individual purportedly robbed a victim who identified himself as Taylor's "half-brother" after Taylor had spent the night at the victim's

house.  During this robbery, Taylor purportedly pointed "a .22 caliber revolver" at the victim, which Taylor had shown the victim the night before.  On June 27, 2013, Taylor was arrested after being found in possession of a Charter Arms, Model Pathfinder, .22 caliber revolver, and ammunition for the weapon.  (*See id.* at 4, ¶ 8).  Taylor admitted possession of this particular firearm in the factual resume accompanying his plea agreement.  (*See* Doc. 18 at 11).

In calculating Taylor's sentencing guideline offense level, the draft PSI, using the 2013 Guidelines Manual, noted that U.S.S.G. § 2K2.1 was the starting point for offenses under 18 U.S.C. § 922(g)(1).  (Doc. 20 at 5, ¶ 21).  The PSI then accurately noted: "However, pursuant to U.S.S.G. § 2K2.1(c)(1)(A), because the defendant used the firearm in connection with the commission or attempted commission of another offense (robbery), the guideline for this offense is cross referenced to U.S.S.G. § 2B3.1(a), which states that the base offense level is 20."[3]  (*Id.* at 5 – 6, ¶ 21).  The draft PSI then applied a 5-point enhancement to the base offense level under § 2B3.1(b)(2) "[b]ecause a firearm was brandished…"  (*Id.* at 6, ¶ 22).  After applying other adjustments, the draft PSI calculated a total offense level of 22, along with a criminal history category of V, resulting in a guideline sentencing range of 77 to 96 months in prison.  (*Id.* at 11, ¶ 59).

---

[3] The PSI did omit discussion of a step in its cross-referencing, as § 2K2.1(c)(1)(A) actually cross-references to U.S.S.G. § 2X1.1, which in turn provides for application of a base offense level "from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."  U.S.S.G. § 2X1.1(a).  U.S.S.G. § 2B3.1 applies to the substantive offense of robbery.

Knight filed written objections to the draft PSI, asserting, *inter alia*, that Taylor denied involvement in any of the robberies mentioned and that the cross-referencing to § 2B3.1 was therefore inappropriate.  (*See* Doc. 22).  The Probation Office responded to Taylor's objections, declined to change its findings (*see* Doc. 24), and issued its final PSI (Doc. 23) accordingly.

Taylor came before the Court for sentencing on July 22, 2014.  There, the Government called Joseph Willis and Sylvia Berry, who testified that Taylor robbed them at gunpoint at Berry's house.  Though Willis initially testified that he believed the robbery occurred on June 26, 2013, his description of the event matched the description of the June 23 robbery set forth in the PSI.  Both Willis and Berry testified that Taylor used a silver chrome gun during the robbery and did not use a .22 handgun. Detective Vincent Gazzier, who investigated that robbery, was also called, confirming that Willis and Berry were robbed on June 23, 2013, and that they identified Taylor as the culprit.  He also testified that a spent 9mm round was recovered from the scene.  Finally, Detective Gazzier testified that the alleged victim of the June 26 robbery later admitted that a robbery did not occur and was charged with making a false report.  (*See* Doc. 32-2).

After witness testimony had concluded, Knight argued:

> Your Honor, the Probation Office has given my client a five-level enhancement, which I've objected to in my sentencing pleading, and the five-level enhancement is based upon a brandishing of a firearm. My client was charged with being a felon in possession of a .22-caliber firearm.  It's not disputed he pled guilty to that offense.  He's not pled guilty to any offense involving a nine-millimeter or to brandishing a nine-millimeter.

4

> We think that the five-level enhancement in paragraph 22 is inappropriate here because the .22 was not involved in the alleged felony which occurred on June 23rd of 2013.  He was in possession - - at least the evidence suggests that he was in possession of a firearm on that date, but it was not the .22 that's alleged in the incident.  Therefore, we strenuously argue that the five-level enhancement should not apply because of that.  He did not possess this firearm in connection with another felony offense.
>
> He was discovered to be in possession of a .22 revolver when he was arrested, and there was no - - there was no felony - - felonious activity going on at the time of his arrest.  So we submit that the five-level enhancement should not apply.

(*Id.* at 29 – 30).[4]

The Court overruled this objection and sentenced Taylor to 96 months in prison, the high end of his calculated guideline range, to be followed by a 3-year term of supervised release.  (*See id.* at 35 – 38; Doc. 27).  No direct appeal was taken.  Proceeding *pro se*, Taylor now challenges his sentence under § 2255 (*see* Doc. 29).

After conducting a preliminary review of Taylor's § 2255 motion under Rule 4(b) of the Rules Governing Section 2255 Proceedings, the undersigned set deadlines for answers and replies under Rule 5 of the Rules Governing Section 2255 Proceedings (*see* Doc. 30).  The Government timely filed its response in opposition (Doc. 32), attaching transcripts of Taylor's guilty plea hearing (Doc. 32-1) and

---

[4] Effective November 1, 2014, § 2K2.1's cross-referencing provision applied if "the defendant used or possessed any firearm or ammunition **cited in the offense of conviction** in connection with the commission or attempted commission of another offense…"  U.S.S.G. § 2K2.1(c) (emphasis added).  However, the version of § 2K2.1(c) in effect at the time of Taylor's sentencing did not contain the phrase "cited in the offense of conviction" and applied if "the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense…"  U.S.S.G. § 2K2.1(c) (effective Nov. 1, 2013).

sentencing hearing (Doc. 32-2) in support; Taylor has filed no reply within the permitted time.

## II.   Claims for Relief

Taylor's § 2255 motion alleges two grounds for relief.  One alleges that the Court erred in applying U.S.S.G. § 2B3.1(b)(2)'s five-point enhancement to his guidelines calculation.   The other alleges that Knight rendered ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. Liberally construing Taylor's ineffective assistance of counsel claim,[5] the undersigned finds that Taylor is alleging both that Knight failed to adequately contest the brandishing enhancement at sentencing and that he failed to consult with Taylor about appealing the issue.

## III.   Applicable Law

### A.   General Standards in § 2255 Proceedings

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014).  Specifically, § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence ... If the court finds that the judgment was

---

[5] *See, e.g.*, *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014) ("We liberally construe *pro se* filings, including *pro se* applications for relief pursuant to § 2255.").

rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a)-(b).

"Once the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* at 1232 (internal citations, quotations, and footnote omitted).

Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. *McCoy v. United States,* 266 F.3d 1245, 1258 (11th Cir. 2001); *Jones v. United States,* 153 F.3d 1305, 1307 (11th Cir. 1998); *Mills*[ *v. United States*], 36 F.3d [1052,] 1055[ (11th Cir. 1994)]; *Greene v. United States,* 880 F.2d 1299, 1305 (11th Cir. 1989). This rule generally applies to all claims, including constitutional claims. *See*

*Reed v. Farley,* 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994) ("Where the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation." (internal quotation marks, punctuation, and citations omitted)); *see also Wainwright v. Sykes,* 433 U.S. 72, 84, 97 S. Ct. 2497, 2505, 53 L. Ed. 2d 594 (1977) (applying cause and prejudice standard to constitutional claims).

A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. *Bousley v. United States,* 523 U.S. 614, 622, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998); *Mills,* 36 F.3d at 1055; *Cross v. United States,* 893 F.2d 1287, 1289 (11th Cir. 1990); *Greene,* 880 F.2d at 1305; *Martorana v. United States,* 873 F.2d 283, 284 (11th Cir. 1989); *Parks v. United States,* 832 F.2d 1244, 1246 (11th Cir. 1987). Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if " 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " *Mills,* 36 F.3d at 1055 (quoting *Murray v. Carrier,* 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397 (1986)); *see also Bousley,* 523 U.S. at 622, 118 S. Ct. at 1611; *Jones,* 153 F.3d at 1307.

*Id.* at 1234-35 (footnote omitted).

Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron*[ *v. United States*], 291 F.3d [708,] 715[ (11th Cir. 2002)] (quoting *Holmes v. United States,* 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes,* 876 F.2d at 1553 (quoting *United States v. Guerra,* 588 F.2d 519, 520–21 (5th Cir. 1979)); *see, e.g., Lynn v. United States,* 365 F.3d 1225, 1239

(11th Cir. 2004) ("Because the ... affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted).   *Accord, e.g.*, *Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).

### B.   Ineffective Assistance of Counsel

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984).   "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' "   *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694).   " 'Conclusory allegations of ineffective assistance are insufficient.' "   *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)).   Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted).   *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both

9

prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail.  The *Strickland* test is not easily met; as we have said, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.[]' " (quoting *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc).  "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).  *Accord, e.g., Burt v. Titlow*, 134 S. Ct. 10, 18 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance…").

> In evaluating the first, or "performance," prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence," we have held that in order to prove deficient

performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002).

"[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Id.* at 504. *See also United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255." (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))), *cert. denied*, 134 S. Ct. 962 (2014).

## IV.   Analysis

### A.   Claims for Relief

### 1.   Erroneous Sentencing Enhancement

Taylor is due no relief under § 2255 on his claim that the Court erroneously applied § 2B3.1(b)(2)'s five-point enhancement to his guideline calculation.  As the Government correctly notes, this assertion of error is not cognizable on collateral review under § 2255.  "When a prisoner, like [Taylor], alleges that his sentence was imposed in violation of the laws of the United States or is otherwise subject to collateral attack, a district court lacks the authority to review the alleged error unless the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice … When a federal prisoner, sentenced below the statutory maximum, complains of a sentencing error and does not prove either actual innocence of his crime or the vacatur of a prior conviction, the prisoner cannot satisfy the demanding standard that a sentencing error resulted in a complete miscarriage of justice."  *Spencer v. United States*, 773 F.3d 1132, 1138-39 (11th Cir. 2014) (en banc) (citations and quotations omitted), *cert. denied*, 135 S. Ct. 2836 (2015).   Here, Taylor was sentenced to 96 months in prison, below the statutory maximum of 120 months, *see* 18 U.S.C. § 924(a)(2).

Additionally, Taylor waived his right to raise such a challenge on collateral review as part of his plea agreement.  "An appeal waiver is valid if a defendant enters into it knowingly and voluntarily … [The Eleventh Circuit] ha[s] consistently enforced knowing and voluntary appeal waivers according to their terms."  *United*

12

*States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006). "Waiver will be enforced if the government demonstrates *either:* (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver. An appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error." *United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir. 2005) (per curiam) (citations and quotation omitted).

Taylor's written plea agreement expressly stated that he "knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2555[,]" unless the Court imposed a sentence that exceeded of the maximum statutory penalty or departed upward from the sentencing guidelines, or if the Government appealed. (Doc. 18 at 6 – 7). None of those exceptions occurred here, and Taylor expressly acknowledged that he understood the waiver when the Court specifically questioned him about it during his guilty plea colloquy. (*See* Doc. 32-1 at 13 – 14). Thus, the Government is entitled to enforce the waiver as to this claim of error.

Finally, even if this claim were cognizable on collateral review, "it is beyond dispute that [Taylor] procedurally defaulted his claim that he was erroneously sentenced … [Taylor] failed to advance this claim on direct appeal—indeed, a direct appeal was not even filed. His procedural default can be excused, however, if one of the two exceptions to the procedural default rule applies. []The exceptions are: (1)

13

for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence. Under the cause and prejudice exception, a § 2255 movant can avoid application of the procedural default bar by showing cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error.  Under the actual innocence exception—as interpreted by current Supreme Court doctrine—a movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself." *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (citations and quotation omitted).  Taylor does not argue that he is actually innocent of the crime to which he pled guilty.  He does argue ineffective assistance of counsel, which " 'can constitute cause' under *Frady*." *Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting *Holladay v. Haley*, 209 F.3d 1243, 1254 (11th Cir. 2000)).  " 'In order to do so, however, the claim of ineffective assistance must have merit.' " *Id.* (quoting *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000)).  He also alleges, in conclusory fashion, that Knight abandoned him after sentencing; abandonment by counsel can also constitute "cause" excusing a procedural default. *See Maples v. Thomas*, 132 S. Ct. 912 (2012).  However, Taylor's claims of ineffective assistance and of abandonment are without merit.

Accordingly, the undersigned **RECOMMENDS** that Taylor be denied any relief under § 2255 for his claim of an erroneous sentencing guideline enhancement.

### 2.    Ineffective Assistance of Counsel

In alleging ineffective assistance of counsel, Taylor's § 2255 motion states:

> My attorney informed me that he would straighten out the errors in which the U.S. Attorney possessed and used against me in the sentencing guidelines where there was a case against me that had been dismissed, but used against me to enhance my sentencing to an extra five (5) points, and the attorney told me that he would have it straightened out but didn't and my sentence was enhanced by five points based on a non-conviction by use of false and misapplied behavior, and then counsel abandoned me altogether in court after I was sentenced and made no attempt to correct it.

(Doc. 29 at 3).

To the extent Taylor is arguing that Knight did not sufficiently contest the five-point brandishing enhancement,[6] that claim is affirmatively contradicted by the record.  *See supra*, Section I.  Knight filed written objections to the enhancement, thus obligating the Government to present witnesses to prove the factual basis for the enhancement.[7]  Knight then renewed the objection at the close of evidence at sentencing.  Taylor does not allege any exculpatory evidence that Knight could have presented at sentencing to rebut the alleged "false and misapplied behavior" to which the Government's witnesses testified.   To the extent Taylor complains that evidence of the robbery should not have been considered because Taylor was not convicted of a crime based on those circumstances, none of the guidelines leading to the application of the brandishing enhancement requires a criminal conviction to

---

[6] "Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.' " *Lafler v. Cooper*, 132 S. Ct. 1376, 1386 (2012) (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)).

[7] *See United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009) ("[O]nce a defendant objects to a fact contained in the PSI, the government bears the burden of proving that disputed fact by a preponderance of the evidence … It is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence." (quotation omitted)).

support the enhancement.  In sum, Taylor has failed to demonstrate deficient performance by Knight in opposing the enhancement.

Taylor also claims that Knight "abandoned" him and "made no attempt to correct" the alleged erroneous enhancement after sentencing, which the undersigned construes as a claim of ineffective assistance of counsel for failure to file a direct appeal.

> The *Strickland* test also applies to claims of ineffective assistance based on counsel's failure to file an appeal. *Roe v. Flores–Ortega,* 528 U.S. 470, 476–77, 120 S. Ct. 1029, 1034, 145 L. Ed. 2d 985 (2000). When counsel disregards specific instructions from a convicted defendant to file a notice of appeal, counsel acts in a manner that is professionally unreasonable. *Id.* at 477, 120 S. Ct. at 1035. In the absence of specific instructions, an attorney nonetheless has a constitutional duty to consult with his client about an appeal, when (1) a rational convicted defendant would want to appeal, or (2) the convicted defendant reasonably demonstrated to counsel an interest in appealing. *Id.* at 480, 120 S. Ct. at 1036.

> In the "vast majority of cases," the Supreme Court expects courts will find "that counsel had a duty to consult with the defendant about an appeal." *Id.* at 481, 120 S. Ct. at 1037. Factors we consider in determining whether a rational defendant would want to appeal include whether the conviction follows a guilty plea, whether the defendant received the sentence bargained for as part of a plea agreement, whether the plea agreement waived appellate rights, and whether there are nonfrivolous grounds for appeal. *Id.* at 480, 120 S. Ct. at 1036; *Otero v. United States,* 499 F.3d 1267, 1270 (11th Cir. 2007). A guilty plea both "reduces the scope of potentially appealable issues" and indicates "the defendant seeks an end to judicial proceedings." *Flores–Ortega,* 528 U.S. at 480, 120 S. Ct. at 1036.

> If counsel performed deficiently, the petitioner must demonstrate prejudice by showing there was a reasonable probability that, "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484, 120 S. Ct. at 1038. "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 485, 120 S. Ct. at 1039.

*Fields v. United States*, 577 F. App'x 916, 919 (11th Cir. Aug. 18, 2014) (per curiam) (unpublished), *cert. denied*, 135 S. Ct. 1878 (2015).

Taylor has not alleged that Knight disregarded specific instructions to file a notice of appeal. To the extent he argues that Knight failed to consult with him about an appeal, Taylor has not shown that Knight performed deficiently in this regard. Neither the sentencing transcript (Doc. 32-2) nor the factual allegations in his § 2255 motion indicate that Taylor "reasonably demonstrated to counsel an interest in appealing,"[8] nor does the record support a determination that a rational defendant would have wanted to appeal.

First, Taylor's plea agreement stated that the Government would "recommend to the Court that [Taylor] be sentenced within the applicable advisory sentencing guideline range as determined by the Court." (Doc. 18 at 6, ¶ 21).

---

[8] Analysis of this claim is complicated by the fact that the record contains neither a notice of appeal nor a notice of non-appeal. It is debatable whether Knight was required to file one or the other under the local rules applicable at the time of Taylor's sentencing, as Taylor was convicted under a guilty plea rather than at trial. *See* SD ALA LR 83.8(b)(1) (effective June 1, 1997 – July 31, 2015) ("In the event that a defendant in a criminal action is convicted **following trial**, counsel appointed hereunder shall advise the defendant of his right to appeal and of his right to counsel on appeal. If requested to do so by the defendant, counsel shall file a timely notice of appeal, and he shall continue to represent the defendant unless or until he is relieved by court order. If not so requested by the defendant, counsel shall file a statement that he has informed the defendant of his right to appeal and that the defendant has advised him that he does not desire to appeal, and thereupon his appointment will terminate." (emphasis added)). However, Taylor's written plea agreement stated that if Taylor "receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a 'Notice of Non-Appeal' following sentencing, signed by the defendant." (Doc. 18 at 7). Nevertheless, Knight's failure to file a notice of non-appeal does not warrant a presumption that Taylor requested an appeal be filed or that Knight failed to consult with him about an appeal. *See Burt*, 134 S. Ct. at 17 ("[T]he absence of evidence cannot overcome the 'strong presumption' that counsel's conduct [fell] within the wide range of reasonable professional assistance.' " (quoting *Strickland*, 466 U.S. at 689)).

Counsel for the Government made such a recommendation at sentencing (*see* Doc. 32-2 at 32), and the Court so sentenced Taylor.  Thus, Taylor "received the sentence bargained for as part of a plea agreement."  Second, as discussed previously, Taylor's plea agreement also expressly waived his right to appeal his within-the-guidelines sentence.  Third, the record does not demonstrate any non-frivolous grounds for an appeal of the brandishing enhancement.  As noted previously, the Court expressly stated on the record that it would have imposed the same sentence under § 3553(a) regardless of the guidelines calculation, thus rendering any guideline error harmless on direct appeal under Circuit precedent.  Additionally, the witness testimony at sentencing clearly established that Taylor brandished a firearm in the course of a robbery.  Taylor presented no evidence to rebut this testimony, and his present § 2255 motion does not allege any specific evidence that Knight could have used to do so.  Given the deference owed to a Court's credibility determinations at sentencing Taylor stood little chance of success in challenging them on appeal.  *See, e.g.*, *United States v. Singh*, 291 F.3d 756, 763 (11th Cir. 2002) (stating that the Court of Appeals reviews for "clear error" a district court's factual findings necessary for application of a guideline enhancement, accords "great deference to the district court's credibility determinations," and "give due deference to the district court's application of the guidelines to the facts").

Taylor's attempt to show attorney "abandonment" as cause to overcome procedural default fails for similar reasons.  As stated previously, Taylor has not alleged that Knight disregarded express instructions to file an appeal.  To the

extent Knight may have failed to discuss the prospect of an appeal with Taylor, this would, at most, amount to negligence, which is insufficient to show "abandonment" for purposes of excusing procedural default. *See Cadet v. Fla. Dep't of Corr.*, 742 F.3d 473, 481 (11th Cir. 2014) ("In light of the Supreme Court's *Maples* decision, we hold that attorney negligence, however gross or egregious, does not qualify as an 'extraordinary circumstance' for purposes of equitable tolling; abandonment of the attorney-client relationship … is required."). And since Taylor filed no direct appeal, Knight's service as Taylor's appointed counsel was terminated by operation of the local rules then in effect. *See* SD ALA LR 83.8(b)(1) (effective June 1, 1997 – July 31, 2015) ("If requested to do so by the defendant, [appointed ]counsel shall file a timely notice of appeal, and he shall continue to represent the defendant unless or until he is relieved by court order. If not so requested by the defendant, counsel shall file a statement that he has informed the defendant of his right to appeal and that the defendant has advised him that he does not desire to appeal, and thereupon his appointment will terminate." (emphasis added)).

For these reasons, the undersigned **RECOMMENDS** that Taylor be denied any relief under § 2255 for his claims of ineffective assistance of counsel, and thus that his § 2255 motion be **DENIED**.

## B.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned **RECOMMENDS** that a Certificate of Appealability be **DENIED** for Taylor's § 2255 motion. 18 U.S.C. foll. § 2255, Rule 11(a) ("The district court must

issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may only issue where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).). Where habeas relief is denied on procedural grounds without reaching the merits of the underlying constitutional claim(s), "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on

his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted).

The undersigned finds that reasonable jurists could not debate whether Taylor's § 2255 motion to vacate should be resolved in a different manner or that any of the issues presented is adequate to deserve encouragement to proceed further. Accordingly, Taylor is not entitled to a Certificate of Appealability on any of his claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by the petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011);[9] *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

## C.   Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C.A. § 1915(a)(3). A district court's finding "that an appeal would not be in good faith because no certificate of

---

[9] It should be noted that in that proceeding, the Eleventh Circuit (Judge Hull) also denied the petitioner's motion for certificate of appealability on October 11, 2011. (*See* Doc. 14 in CA-11-0165-WS-C.).

appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000). *See also Weaver v. Patterson*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568218, at *7 (S.D. Ala. June 19, 2012) (Nelson, M.J.), *report and recommendation adopted*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568093 (S.D. Ala. July 3, 2012) (Steele, C.J.) ("An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed. R. App. P. 24(a)(3)(A); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that 'good faith' is 'an objective concept' and that 'not taken in good faith' is 'a synonym for frivolous'); *DeSantis v. United Techs, Corp.*, 15 F. Supp. 2d 1285, 1288–89 (M.D. Fla. 1998) (stating that good faith 'must be judged by an objective, not a subjective, standard' and that an appellant 'demonstrates good faith when he seeks appellate review of any issue that is not frivolous'). An appeal filed *in forma pauperis* is frivolous if 'it appears that the Plaintiff has little to no chance of success,' meaning that the 'factual allegations are clearly baseless or that the legal theories are indisputably meritless.' *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993)."). *But see, e.g., United States v. McCray*, No. 4:07CR20-RH, 2012 WL 1155471, at *2 (N.D. Fla. Apr. 5, 2012) ("Because the defendant has not obtained—and is not entitled

to—a certificate of appealability, any appeal by the defendant will not be taken in good faith. I certify under Federal Rule of Appellate Procedure 24(a) that any appeal will not be taken in good faith and that the defendant is not otherwise entitled to proceed *in forma pauperis* on appeal.").

Considering the above-stated reasoning, the undersigned **RECOMMENDS** the Court certify that any appeal by Taylor in this action would be without merit and therefore not taken in good faith and, accordingly, find that Taylor is not entitled to appeal *in forma pauperis*.

## V.  Conclusion

In accordance with the foregoing analysis, it is **RECOMMENDED** that Taylor's § 2255 motion (Doc. 29) be **DENIED** without an evidentiary hearing and **DISMISSED with prejudice**, and that his duplicate § 2255 motion (Doc. 31) be found **MOOT**. Should that recommendation be adopted, it is further **RECOMMENDED** that Taylor be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## VI.  Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate

judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 10th day of May 2016.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**